**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-CR-175-JFH** |
| **DAESHAUN JARED ICKLE COBRETTI SMALL,** | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court are four motions filed by Defendant Daeshaun Jared Ickle Cobretti Small ("Defendant"), all of which the United States of America (the "Government") opposes. These motions are: (1) a Motion to Strike Surplusage from Count One of the Superseding Indictment [Dkt. No. 55]; (2) a Motion to Dismiss Counts Two and Three of the Superseding Indictment [Dkt. No. 55]; a Motion to Exclude Expert Witness Testimony [Dkt. No. 43]; and an Omnibus Motion in Limine [Dkt. No. 44]. For the reasons set forth, Defendant's Motions to Strike and Dismiss are DENIED, his Motion to Exclude Expert Witness Testimony is GRANTED; and his Motion in Limine is GRANTED in part, and the Court RESERVES JUDGMENT in part. [1]

## BACKGROUND

The events surrounding Defendant's case all take place on or around December 31, 2022. On that date, Defendant was allegedly driving a Ford Mustang on US-75 within the Eastern District of Oklahoma. He had at least two passengers in his car, one of whom was "D.S.," who sat in

---

[1] The Court also notes that it has reviewed Defendant's objections to the Government's Notice of Intent to Introduce Evidence Under Fed. R. Evid. 803 and 902. Dkt. No. 45. Outside of Defendant's objections to the Life360 evidence (which the Court analyzes under Defendant's Motion in Limine), the Court will wait to resolve the rest of Defendant's objections until trial.

Defendant's backseat.  While traveling at a speed estimated to be over 90 miles per hour, Defendant crashed into a Ford F-150 pickup truck, and both vehicles departed the roadway and rolled over. D.S. was ultimately ejected from the Mustang and died at the scene.  Defendant allegedly consumed alcohol prior to the accident, and a toxicologist tested his blood alcohol concentration to be 0.16 at the time of the crash.  Dkt. No. 64.

A Federal Grandy Jury subsequently returned a Superseding Indictment against Defendant, which was filed on January 14, 2026.  Dkt. No. 50.  The Superseding Indictment charges Defendant with the following three counts: (1) Involuntary Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112, 1151, and 1153; (2) Assault Resulting in Serious Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153; and (3) Driving Under the Influence Resulting in Great Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 13, 1151, and 1152, and 47 Okla. Stat. § 11-904(B).  *Id.*

In response, Defendant filed a Motion to Strike several allegations in Count One of the Superseding Indictment, as well as a Motion to Dismiss Counts Two and Three.  Dkt. No. 55. Additionally, Defendant seeks to prohibit one of the Government's witnesses—Oklahoma Highway Patrol Trooper Jared Sharp ("Trooper Sharp")—from testifying as an expert about Defendant's speed based on Life360 GPS data obtained from D.S.'s phone.  Dkt. No. 43.  Finally, Defendant also filed an Omnibus Motion in Limine seeking to exclude (1) any other references to Life360 and its data and (2) any testimony or evidence referring to his driving speed unless a proper foundation is laid.  Dkt. No. 44.  The Court will address all of these motions below.

## ANALYSIS

### I.  DEFENDANT'S MOTION TO STRIKE SURPLUSAGE IN COUNT 1 [Dkt. No. 55]

Defendant first moves to strike several allegations in Count One of the Superseding Indictment based on Federal Rule of Criminal Procedure 7(d).  Dkt. No. 55.  Count One charges Defendant with involuntary manslaughter in Indian Country, which is the unlawful killing of a human without malice:

- while committing an unlawful act not amounting to a felony;

- while committing a lawful act in an unlawful manner; or

- while committing a lawful act without due caution and circumspection, which might produce death.

18 U.S.C. § 1112(a).  Based on this framework, the Superseding Indictment alleges the following to charge Defendant with involuntary manslaughter:

(1) Defendant unlawfully killed D.S. on December 31, 2022, in the commission of an unlawful act not amounting to a felony by failing to devote full time and attention to driving, contrary to 47 Okla. Stat. § 11- 901b ("Allegation One");

(2) Defendant unlawfully killed D.S. on December 31, 2022, in the commission of an unlawful act not amounting to a felony by operating a motor vehicle under the influence of alcohol, contrary to 47 Okla. Stat. § 11-902 ("Allegation Two");

(3) Defendant unlawfully killed D.S. on December 31, 2022, in the commission of a lawful act—operating a motor vehicle—in an unlawful manner and without due caution and circumspection which might produce death ("Allegation Three").

Dkt. No. 50.  Defendant moves to strike the first and third of these allegations from the Superseding Indictment.  Dkt. No. 55.  That Motion is DENIED for the reasons below.

### A.  Standard Under Fed. R. Crim. P. 7(d)

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon a defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  The

purpose of this Rule is to provide "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment . . . which may . . . be prejudicial." *Id.* advisory committee note (1944). Accordingly, the Court "may strike as surplusage allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990) (citations omitted); *see also United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006) (stating that a court may strike allegations from an indictment if they are "both independent of and unnecessary to the offense on which a conviction ultimately rests"). However, "[i]f the challenged language is information that the government intends [to] prove as part of its case-in-chief, the language should not be considered surplusage regardless of the prejudicial impact of the evidence." *United States v. Molina-Chavez*, No. 10-CR-187-CVE, 2011 WL 52392, at *2 (N.D. Okla. Jan. 5, 2011) (citing *United States v. Thomas*, 875 F.2d 559, 562 n. 2 (6th Cir. 1989)).

### B. Defendant's Specificity Challenge to Allegations One and Three

Defendant first moves to strike Allegations One and Three for lack of specificity in the Superseding Indictment. [2] However, Allegations One and Three are hardly "independent of and unnecessary to the offense on which [Defendant's] conviction ultimately rests." *Brooks*, 438 F.3d at 1237. Quite the opposite—both allegations quote the language of the applicable statutes to outline the elements of his charge, provide allegations of an underlying act where necessary, and do not set forth any other irrelevant or inflammatory information. In fact, Defendant does not even argue that Allegations One and Three are immaterial or inflammatory. Because the Government

---

[2] The Court notes that Defendant moved to strike allegations in Count One based on Rule 7(d) and did not moved to dismiss Count One based on lack of specificity. Accordingly, the Court analyzes his challenge under Rule 7(d)'s standard for striking surplusage, not whether the indictment is sufficiently specific.

intends to prove these allegations as part of its case-in-chief, this language "should not be considered surplusage" and should not be struck under Rule 7(d). *Molina-Chavez*, 2011 WL 52392, at *2.

### C. Defendant's Void-for-Vagueness Challenge to Allegation One

The same could be said for the rest of Defendant's challenges to Allegations One and Three. However, because those remaining challenges are improper on other grounds as well, the Court will briefly address their infirmities.

In addition to lack of specificity, Defendant contends that 47 Okla. Stat. § 11-901b, which Allegation One incorporates, is unconstitutionally vague. This is so, Defendant asserts, because § 11-901b "does not give any indication as to what actus reus it criminalizes" and "does not provide a meaningful standard or rule for a motorist to follow." Dkt. No. 55 at 6-7. However, Defendant must show the statute is unconstitutional as applied to him before he can attack it facially, if it all. *See United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997); *see also United States v. Morales-Lopez*, 92 F.4th 936, 941 (10th Cir.), *cert. denied*, 145 S. Ct. 241 (2024). And, the "sensitive and fact intensive analysis" required to evaluate an as-applied attack "should be based only on the facts as they emerge at trial." *Reed*, 114 F.3d at 1070. Therefore, pretrial resolution of his facial or as-applied attack is inappropriate.

### D. Defendant's Evidentiary Burden Challenge to Allegation One

Finally, Defendant also asserts that Allegation One should be struck because the Government cannot prove an element of § 11-901b. According to him, § 11-901b requires a law enforcement officer to observe his dangerous operation of the vehicle. Dkt. No. 55 at 6. Because no officer saw his dangerous driving behavior, he alleges, he cannot be convicted of involuntary manslaughter based on a violation of § 11-901b. *Id.*

However, the Court disagrees with Defendant's interpretation of § 11-901b. Section 11-901b provides:

> The operator of every vehicle, while driving, shall devote their full time and attention to such driving.
>
> No law enforcement officer shall issue a citation under this section unless the law enforcement officer observes that the operator of the vehicle is involved in an accident or observes the operator of the vehicle driving in such a manner that poses an articulable danger to other persons on the roadway that is not otherwise specified in statute.

47 Okla. Stat. § 11-901b. The first paragraph of this statute requires a driver to devote his full time and attention to the road, while the second paragraph sets forth the standards governing an officer's ability to issue a citation for his failure to do so. Even though this second paragraph limits an officer's ability to issue a citation, it does not follow that it limits a prosecutor's ability to charge him or for a jury to convict him for a violation of the statute. Otherwise, an individual could escape penalty for endangering the roadways just because an officer was elsewhere, regardless of whether the government could prove his violation beyond a reasonable doubt by other means. Surely the Oklahoma Legislature did not intend for such a result.

Furthermore, § 11-901b says that an officer can issue a citation if the officer observes (1) the driver's dangerous driving behavior *or* (2) the driver's involvement in an accident. 47 Okla. Stat. § 11-901b. Defendant focuses on whether an officer observed his driving behavior, but he ignores this other prong. So, assuming that Defendant's interpretation of § 11-901b and assertion of the facts is correct, the Court cannot issue a pretrial ruling determining whether the Government can establish beyond a reasonable doubt than an officer observed Defendant's involvement in an accident. *See United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) ("Rule 12 authorizes the district court to resolve before trial only those motions 'that the court can determine without a trial of the general issue.'") (quoting Fed. R. Crim. P. 12(b)(2)).

Accordingly, the Court DENIES Defendant's Motion to Strike Allegations One and Three. Dkt. No. 55.

## II.    DEFENDANT'S MOTION TO DISMISS COUNTS 2 AND 3 [Dkt. No. 55]

In addition to striking allegations in Count One, Defendant also moves to dismiss Counts Two and Three of the Superseding Indictment.  For the following reasons, his Motion is DENIED.

### A.  Count Two

Defendant moves to dismiss Count Two of the Superseding Indictment, which charges him with assault resulting in serious bodily injury in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), 1151, & 1153.  Dkt. No. 50 at 1-2.  Essentially, Defendant argues that if the Government can prove involuntary manslaughter, then his assault charge should "merge" with his involuntary manslaughter charge.  This is because "Mr. Small could be guilty of only manslaughter (if Mr. Small caused D.S.'s death) or only assault (if Mr. Small did not cause D.S.'s death).  But he cannot be guilty of *both* assault and manslaughter." Dkt. No. 55 at 9.  Holding otherwise, Defendant asserts, would make Count Two "logically inconsistent" with Count One.  *Id.*  To avoid this logical inconsistency, he asks the Court to dismiss Count Two.  *Id.*  The Court declines to do so.

Defendant's position is that if the Government proves he killed D.S., then he cannot also be guilty of assault because the assault would "merge" with involuntary manslaughter.  Defendant thus seems to argue that his assault charge is a lesser-included offense of involuntary manslaughter. This argument implicates *Blockburger v. United States*, which held that two offenses are the same for Double Jeopardy purposes unless each requires proof of a fact that the other does not.  284 U.S. 299, 304 (1932).  So, "when one offense is a lesser-included offense of another, the two offenses are the same," and conviction for the same offense would violate the Double Jeopardy clause of the Fifth Amendment. *United States v. Isabella*, 918 F.3d 816, 847 (10th Cir. 2019).  "To determine

what may be a lesser-included offense, courts focus on the textual elements of the offenses." *Id.* Ultimately, "statutes punish the same offense when one offense contains all the elements of another even if it contains additional elements." *Id.*

Here, assault resulting in serious bodily injury is not a lesser included offense of involuntary manslaughter "[b]ecause the elements of the crimes are different." *United States v. Fowler*, 702 F. App'x 531, 533 (9th Cir. 2017); *see also United States v. Decoteau*, 642 F. App'x 739 (9th Cir. 2016) (holding that convictions for involuntary manslaughter and assault resulting in serious bodily injury did not violate the Double Jeopardy Clause); *United States v. Contreras*, 816 F.3d 502, 508 (8th Cir. 2016) ("[A]ssault resulting in serious bodily injury contains different elements than murder . . . ."). For instance, the Tenth Circuit's Pattern Jury Instructions outline the elements of involuntary manslaughter under 18 U.S.C. § 1112 as follows:

(1) The defendant caused the death of the victim (a) while the defendant was committing an unlawful act not amounting to a felony, or (b) while the defendant was committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death;

(2) The defendant knew that his conduct was a threat to the lives of others, or it was foreseeable to him that his conduct was a threat to the lives of others; and

(3) The killing took place within the territorial or special maritime jurisdiction of the United States.

Tenth Cir. Crim. Pattern Jury Instr. 2.54.1. The instructions also emphasize that "the government need not prove that the defendant specifically intended to cause the death of the victim." *Id.* Rather, "[t]he government must prove gross negligence amounting to wanton and reckless disregard for human life." *Id.*

In contrast, an assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) requires proof that:

    (1) the defendant assaulted his victim with "purpose, knowledge, or recklessness;" and

    (2) the victim suffered serious bodily injury.

*United States v. Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006). For purposes of these statutory elements, the Tenth Circuit has "defined assault in § 113(a) 'as either an attempted battery or as placing another in reasonable apprehension of immediate bodily harm.'" *United States v. Clark*, 981 F.3d 1154, 1165 (10th Cir. 2020) (quoting *United States v. Muskett*, 970 F.3d 1233, 1241 (10th Cir. 2020)). Furthermore, "'serious bodily injury' is defined to mean 'bodily injury' (including 'physical pain' and 'illness') that involves: (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Id.* (citing 18 U.S.C. § 1365(h)(3) and 18 U.S.C. § 113(b)(2)).

    As displayed above, these charges require proof of different elements. For example, assault resulting in serious bodily injury requires an attempted battery or placing another in reasonable apprehension of immediate bodily harm, whereas involuntary manslaughter does not. Defendant's assault charge also allows for a greater spectrum of proving mens rea, whereas an involuntary manslaughter is limited to gross negligence. Furthermore, involuntary manslaughter requires a finding that Defendant committed an unlawful act, a lawful act in an unlawful manner, or committed a lawful act without due caution and circumspection, which might produce death. Assault resulting in serious bodily injury does not. And most obviously, involuntary manslaughter requires death, whereas Defendant's assault charge requires serious bodily injury.

    Finally, "unless Congress expresses a contrary intent," the Court presumes "that Congress intended multiple convictions and sentences for the same criminal behavior which violates more than one statute when each statute requires proof of a fact that the other does not." *United States*

*v. Yurek*, 925 F.3d 423, 439 (10th Cir. 2019) (quoting *United States v. Benoit*, 713 F.3d 1, 12 (10th Cir. 2013)). Defendant has not pointed to any evidence that Congress expressed an intent to preclude a conviction for both involuntary manslaughter and assault resulting in serious bodily injury, and the Court has not found any. Accordingly, the Court presumes that Congress intended that Defendant could be convicted for involuntary manslaughter *and* assault resulting in serious bodily injury, even if the Government could prove that he killed D.S. Of course, it will be the Government's burden to prove each element beyond a reasonable doubt. For these reasons, Defendant's Motion to Dismiss Count Two is DENIED.

### B. Count Three

#### 1. *Defendant's Assimilative Crimes Act Challenge*

Defendant next moves to dismiss Count Three, which charges him with driving under the influence resulting in great bodily injury in Indian Country in violation of 47 Okla. Stat. § 11-904(B). Dkt. No. 55 at 11. Although § 11-904(B) is a state criminal law, the Government seeks to assimilate this law into federal law under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. The ACA assimilates certain state criminal laws into federal law for acts committed on federal enclaves and can apply these "assimilated states crimes" to acts committed within Indian Country. *See* 18 U.S.C. § 1152; *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011). Importantly, "[t]he ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998). However, Defendant argues this Count must be dismissed because 18 U.S.C. § 113 (which criminalizes various assaults within the special maritime and territorial jurisdiction of the United States) precludes assimilation. The Court disagrees.

Federal courts follow a two-step test to determine when state law can be assimilated in a federal enclave. Step one requires courts to ask whether the defendant's act or omission is made punishable by any enactment of Congress. *Id.* at 164. To make this determination, courts consider whether any federal statute "seek[s] to punish approximately the same wrongful behavior" as the state statute. *Id.* at 165. If the answer is "no," the ACA presumptively assimilates the state law, and the Government is permitted to bring state charges. *Id.* at 164. But, if the answer is "yes," courts move to step two, which asks "whether the federal statutes that apply to the act or omission preclude application of the state law in question." *Id.* The Supreme Court has identified three circumstances when a federal statute may preclude application of state law—when (1) the state statute's "application would interfere with the achievement of a federal policy," (2) "the state law would effectively rewrite an offense definition that Congress carefully considered," or (3) "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.* at 164-65.

Here, the Court must first ask whether Defendant's conduct—driving a vehicle while under the influence of alcohol and causing an accident that resulted in D.S. suffering great bodily injury—is made punishable by Congressional enactment. The Oklahoma statute at issue, 47 Okla. Stat. § 11-904(B), allows a defendant to be convicted for "causing[ing] an accident resulting in great bodily injury to any person other than himself while driving or operating a motor vehicle within this state" and while under the influence of alcohol or other intoxicating substance. 47 Okla. Stat. § 11-904(B)(1). But, 18 U.S.C. § 113(a)(6), which criminalizes assaulting another and causing them serious bodily injury, could conceivably cover this same wrongful conduct. Even the Government must think so because it charged Defendant under § 113(a)(6) for the same

11

underlying conduct in Count Two. *See* Dkt. No. 50. Accordingly, step one of the *Lewis* test is satisfied.

Next, the Court must consider whether 18 U.S.C. § 113(a)(6) precludes application of 47 Okla. Stat. § 11-904(B)(1). *See Lewis*, 523 U.S. at 164-65. For this step, Defendant relies on *United States v. Harris*, which held that § 113's "detailed and comprehensive nature" precluded assimilation of a Wyoming statute that criminalized threatening another with a drawn and deadly weapon. 10 F.4th 1005, 1014 (10th Cir. 2021). In doing so, the Tenth Circuit emphasized that:

> [Section 113] lays out eight different assaultive acts, each with a corresponding punishment—from assault with intent to commit murder to simple assault. It then provides specific definitions of terms used in the statute, including terms such as "substantial bodily injury" and "serious bodily injury." Congress clearly and precisely explicated the range of conduct that qualifies as assault within areas of federal jurisdiction.

*Id.* at 1013–14. The Tenth Circuit thus reasoned that "[t]he wide spectrum of assaultive conduct prohibited by § 113 evinces a considered legislative judgment to punish a variety of behavior in federal jurisdictions. And the broad range of punishments in § 113—from mere fines to twenty years' imprisonment—gives complete coverage that should not be undermined by the assimilation of the Wyoming statute." *Id.* (quotations and citations omitted). Otherwise, the court emphasized, the Wyoming statute "would effectively rewrite an offense definition that Congress carefully considered." *Id.* at 1013 (quotations and citations omitted).

Although *Harris*'s analysis of § 113 is favorable to Defendant, its holding does not categorically preclude any state statute that could crossover with § 113 from being assimilated. Indeed, as the Supreme Court stated in *Lewis*, "[t]here are too many different state and federal criminal laws, applicable in too many different kinds of circumstances bearing too many different relations to other laws, to common-law tradition, and to each other, for a touchstone to provide an automatic general answer" on whether a federal statute precludes application of a state statute. 523

12

U.S. at 165.  Furthermore, *Harris* analyzed whether § 113 precluded application of a state statute that criminalized threatening another with a drawn and deadly weapon.  Whether § 113 precluded assimilation of a state statute criminalizing driving under the influence and causing serious bodily harm to another was not at issue there.

Importantly, because the Tenth Circuit did not examine a similar driving statute in *Harris*, it did not discuss several ACA provisions "demonstrat[ing] that Congress intended the assimilation of state criminal offenses concerning driving while intoxicated."  *United States v. Key*, 599 F.3d 469, 480 (5th Cir. 2010).  For instance, the ACA provides in part:

> Subject to paragraph (2) and for purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State . . . for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law. Any limitation on the right or privilege to operate a motor vehicle imposed under this subsection shall apply only to the special maritime and territorial jurisdiction of the United States.

18 U.S.C. § 13(b)(1).  Subsection (b)(2) also provides that:

> In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State . . . the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine under this title, or both, if--(i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and (ii) the law of the State . . . in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).

*Id.* § 13(b)(2).  These provisions express a clear Congressional intent to assimilate state laws that prohibit operating a motor vehicle while intoxicated.  So, instead of "disrupt[ing] Congress's careful assault definitions" as the Wyoming statute did in *Harris*, assimilating Oklahoma's driving statute here furthers an explicit federal policy designed to punish driving under the influence on federal enclaves.  Accordingly, 47 Okla. Stat. § 11-904(B) may be assimilated.

2. *Defendant's Merger Challenge to Count Three*

Finally, Defendant also moves to dismiss Count Three because it "merges" with and is "logically inconsistent" with Count One.  Dkt. No. 55 at 12.  Defendant essentially retreads the same arguments he made for Count Two.  The Court will also deny this request.

Like above, the Court will start its analysis by comparing the elements of Defendant's involuntary manslaughter charge under 18 U.S.C. § 1112 to his charge for driving under the influence resulting in great bodily injury under 47 Okla. Stat. § 11-904(B). The Tenth Circuit's Pattern Jury Instructions outline the elements of involuntary manslaughter under 18 U.S.C. § 1112 as follows:

(1) The defendant caused the death of the victim (a) while the defendant was committing an unlawful act not amounting to a felony, or (b) while the defendant was committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death;

(2) The defendant knew that his conduct was a threat to the lives of others, or it was foreseeable to him that his conduct was a threat to the lives of others; and

(3) The killing took place within the territorial or special maritime jurisdiction of the United States.

Tenth Cir. Crim. Pattern Jury Instr. 2.54.1.  The instructions also emphasize that "the government need not prove that the defendant specifically intended to cause the death of the victim."  *Id.* Rather, "[t]he government must prove gross negligence amounting to wanton and reckless disregard for human life."  *Id.*

In contrast, the Oklahoma Uniform Jury Instructions set forth the following elements under 47 Okla. Stat. § 11-904(B):

(1) The defendant caused an accident;

(2) resulting in great bodily injury to another person;

(3) while driving a motor vehicle;

(4) on a (a) public road, street, highway, turnpike, or place, or (b) private road, street, alley, or lane which provides access to one or more single or multi-family dwellings;

(5) (while having a blood/breath alcohol concentration of 0.08 or more)/(while under the influence of alcohol)/(while under the [influence of any intoxicating substance other than alcohol]/[combined influence of alcohol and any other intoxicating substance] which may render a person incapable of safely driving a motor vehicle); and

(6) the blood/breath alcohol test was administered within two hours after arrest (if the prosecution is based on having a blood/breath alcohol concentration of 0.08 or more).

Okla. Unif. Jury Instruction CR 6-22. Furthermore, "great bodily injury" as used in these instructions "means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 47 Okla. Stat. § 11-904(B).

There is seemingly little to no overlap of elements between Count One and Count Three based on their respective statutes. True, the Government alleged in the Superseding Indictment that Defendant committed involuntary manslaughter while he was driving under the influence, and the Government may intend to use some of the same evidence to prove both charges. *See* Dkt. No. 50. However, "[i]n assessing whether the crimes require proof of different facts, [courts] do 'not focus on the acts charged in the indictment . . . but rather on the elements of the crimes.'" *United States v. Angilau*, 717 F.3d 781, 787 (10th Cir. 2013) (quoting *United States v. Davis*, 793 F.2d 246, 248 (10th Cir. 1986)). Indeed, "[t]o determine what may be a lesser-included offense, courts focus on the *textual elements* of the offenses." *Isabella*, 918 F.3d at 847 (emphasis added).

Upon examining these elements, the Court finds no Congressional intent that Defendant cannot be convicted for involuntary manslaughter and driving under the influence resulting in great bodily injury. Quite the opposite—as discussed above, subsection (b) of the ACA seemingly

15

demonstrates that Congress *intended* for defendants to be charged for state criminal offenses concerning driving while intoxicated, even when death results. *See Key*, 599 F.3d at 480 (holding that 18 U.S.C. § 1112 did not preclude assimilation of Texas driving under the influence law). Finally, in a case where an Indian defendant was convicted for involuntary manslaughter in federal court, which arose from the same circumstances as his guilty plea to driving under the influence in tribal court, the Eighth Circuit held there was no Double Jeopardy because "[t]he prosecution for involuntary manslaughter required different proof than that required to establish [defendant's] guilt in Tribal Court." *United States v. DeCoteau*, 516 F.2d 16, 18 (8th Cir. 1975).

For these reasons, Defendant's Motion to Dismiss Count Three is DENIED. However, the Court emphasizes this ruling is preliminary and may revisit Defendant's Double Jeopardy concerns as trial progresses.

### III. DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY [Dkt. No. 43]

Defendant also moves to exclude portions of Trooper Sharp's expert testimony. Trooper Sharp used Life360 GPS and timestamp data from the victim's phone to map different points of Defendant's driving path. Dkt. No. 43-1 at 7. After determining how far apart those points were, he used the Life360 timestamps to determine how fast Defendant traveled between those points. *Id.* Based on this data and methodology, he proposes to testify that Defendant travelled at an average speed of 91 to 95 miles per hour during the six to seven minute-period before the crash. Dkt. No. 46 at 6. Defendant moves to exclude this portion of his testimony under Federal Rules of Evidence 702 and 403. Dkt. No. 43.[3] The Court agrees this opinion must be excluded.

---

[3] The Government notified Defendant that "Trooper Sharp will testify consistent with reports and materials regarding accident reconstruction, Life360 data, and crash data," and that "the Mustang was traveling approximately 91 to 95 miles per hour before the crash," which Defendant challenges here. Dkt. No. 38 at 3. However, Trooper Sharp will also potentially testify as to several other

When an objection to an expert's opinion is raised, Federal Rule of Evidence 702 requires the Court to perform a gatekeeping duty before the jury can hear that opinion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). To perform this duty, the Court "must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Only then must a Court "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Ultimately, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

To begin, an expert's qualifications must provide "a foundation for a witness to answer a specific question." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1279 (W.D. Okla. 2018). (quotation and citation omitted). In other words, an expert cannot provide an opinion regarding matters on which her background and training do not provide a proper foundation. *Id.* Here, Trooper Sharp relied on Life360's GPS and timestamp data to determine Defendant's speed. Dkt. No. 46 at 5-6. Because the Life360 data is foundational to his opinion, Defendant will likely cross-examine him about that data's reliability. However, the Government has not shown that Trooper Sharp is qualified to explain how Life360 obtained or created the data or to discuss factors relevant to the data's accuracy. Although the Court has little doubt that Trooper Sharp's is qualified to perform mathematical calculations using this data, the Court finds that he is not qualified to opine on its origination or reliability.

---

categories of evidence, which Defendant did not move to exclude. The Court makes no admissibility determination about the rest of Trooper Sharp's unchallenged opinions.

Furthermore, Trooper Sharp's opinion is unreliable because of its dependency on the Life360 data. Indeed, Life360 declares on its website that its data should not be used to prove a person's location or driving speed:

> If you are pulled over for allegedly driving over the speed limit, you might wonder if Life360's tracking features could be viable proof of your actual speed. The accuracy of speed and location information within the app, most of which is outside of Life360's control, is **not** designed nor intended to be provided to traffic authorities, in order to support insurance claims, or for any other matters that may require proof of speed or location.

Dkt. No. 43-4 at 2 (emphasis added). Elsewhere, Life360 also acknowledges that its speed information "is determined in large party by the quality of your service and your device. Due to this, it is possible that some points during your trip might be missed or speeds captured may be inaccurate." Dkt. No. 43-5 at 1. The Government tries to circumvent Life360's misgivings about using its data in court by citing to unpersuasive marketing statements on its website. Dkt. No. 46 at 5 (citing Dkt. 43-3 at 3 ("Track your family's location, get alerts when they arrive, and keep everyone else close—even from far away . . . . Love knows no distance, but we do. In fact, we know 'exactly' where your fave people and things are.")). The Government also cites several inapposite cases that do not evaluate the reliability of Life360 data for an expert opinion. *Id.* (citing *Plush v. Cincinnati*, 164 N.E.3d 1056, 1059-60 (Ohio Ct. App. 1st Dist. 2020); *R.R. v. A.H.*, No. 20-15834, 2022 WL 2255303, \*1 (New Castle County, Del. Fam. Crt. Apr. 11, 2022). Further, the Government makes no effort to show that such data is regularly relied upon by other experts to prove a defendant's speed or location, nor does the Government argue that Trooper Sharp calculated Defendant's speed based on other reliable data. For these reasons, Trooper Sharp's opinion is unreliable.

Finally, Trooper Sharp's opinion is minimally relevant, and any relevancy it has is substantially outweighed by the danger of unfair prejudice. Trooper Sharp will allegedly testify

18

that "Defendant was travelling at an average speed of 91 to 95 miles per hour" during the six to seven minutes before the crash.  Dkt. No. 46 at 2.  However, the Government does not charge Defendant for speeding in those six to seven minutes.  Instead, the Government charges Defendant for crashing his vehicle and killing D.S. *because* he was speeding, among other allegations.  Thus, the pertinent question is how fast Defendant was driving when he hit the other car, not what his average speed was in the six to seven minutes beforehand.  Therefore, Trooper Sharp's opinion is minimally relevant.

At the same time, introduction of this opinion would substantially prejudice Defendant.  *See* Fed. R. Evid. 403.  If the jury learns that Defendant drove at such a high speed in the six to seven minutes before the crash, they are likely to assume he was traveling at that speed when he crashed, which Trooper Sharp's methodology cannot conclude.  Furthermore, because Trooper Sharp is unqualified to testify about the data's origination and its reliability, Defendant cannot effectively cross-examine him about those issues.  Thus, Defendant would be deprived of a critical tool for his defense.  Finally, because Life360 expressly advises against using its data to prove a person's speed or location, it is unfair to deprive Defendant of his liberty with that data.  This is especially true when the conclusion based on that data is minimally relevant.

Accordingly, the Court GRANTS Defendant's Motion to Exclude Trooper Sharp's Life360-related opinions.

## IV.  DEFENDANT'S OMNIBUS MOTION IN LIMINE [Dkt. No. 44]

Defendant also filed an Omnibus Motion in Limine seeking to exclude two related categories of evidence.  Dkt. No. 44.

*First*, if the Court excludes Trooper Sharp's Life360 testimony, Defendant asks the Court to exclude any other references to Life360 and its data as irrelevant under Rule 401 and confusing

under Rule 403. Dkt. No. 44 at 4-6. Defendant argues that whether D.S. had Life360 on his phone does not make any fact relevant to Defendant's charges more probable, and jurors that know about Life360 may question why they are not hearing testimony regarding the app's data. *Id.* The Government responds by arguing that the Life 360 data is reliable, but it does not address Defendant's Rule 401 and Rule 403 concerns. Dkt. No. 47 at 3-4.

As the Court explained above, Trooper Sharp's Life360 opinions and the data he relies upon are inadmissible to prove Defendant's speed. The Court incorporates that reasoning here and GRANTS Defendant's Motion in part to exclude the Government from introducing the Life360 data to prove that Defendant sped. However, the Court will RESERVE JUDGMENT on whether this data or the app's existence on D.S.'s phone is admissible for another purpose. If either party seeks to admit such evidence, they must first obtain permission from the Court outside the presence of the jury.

*Second*, Defendant asks the Court to exclude any testimony or evidence referring to his driving speed unless a proper foundation is laid. Dkt. No. 44 at 6-7. In response, the Government emphasizes that Defendant's surviving passenger, J.R., and the occupants of the vehicle that Defendant crashed into may testify about Defendant's speed as lay witnesses under Federal Rule of Evidence 701. Dkt. No. 47 at 5. The Tenth Circuit has regularly held that eyewitnesses may testify about a defendant's speed as lay witnesses. *See, e.g.*, *Gust v. Jones*, 162 F.3d 587, 595 (10th Cir. 1998) (holding the district court did not abuse its discretion in allowing lay witness to testify that the driver was traveling within the posted speed limit at the time of the accident); *see also Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) (noting that "persons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions at to matters such as the speed of an automobile under their observation"). Accordingly, the

Government's proposed witnesses may testify about Defendant's speed assuming it lays an adequate foundation under Rule 701.

For the above reasons, Defendant's Omnibus Motion in Limine [Dkt. No. 44] is GRANTED in part and the Court RESERVES JUDGMENT in part. These rulings are preliminary and subject to change as trial unfolds. *See United States v. Commanche*, 577 F.3d 1261, 1270 (10th Cir. 2009).

## CONCLUSION

For the reasons set forth above, Defendant's Motions to Strike and Dismiss [Dkt. No. 55] are DENIED, his Motion to Exclude Expert Witness Testimony [Dkt. No. 43] is GRANTED; and his Omnibus Motion in Limine [Dkt. No. 44] is GRANTED in part, and the Court RESERVES JUDGMENT in part.

Dated this 30th day of January 2026.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE